**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**RYAN PITTS**                                                                                           **PLAINTIFF**

**v.**                                          **Case No.: 4:21-cv-00075-LPR**

**FIRE EXTINGUISHER SALES &
SERVICES OF ARKANSAS, LLC,
and WALTER MYERS SIMPSON**                                        **DEFENDANTS**


**FIRE EXTINGUISHER SALES &
SERVICES OF ARKANSAS, LLC**                           **COUNTER-CLAIMANT**

**v.**

**RYAN PITTS**                                                     **COUNTER-DEFENDANT**

<u>**SUPPLEMENTAL INJUNCTION**</u>

       This case is about a fired employee (Mr. Pitts) who has more than likely stolen his former

employer's (FESSAR) confidential and proprietary information, and more than likely used such

information to gain an unfair advantage while competing with his former employer in violation of

a valid Noncompetition Agreement.  Much, but not all, of the history of this case is set forth in the

Court's June 11, 2021 Preliminary Injunction Order.[1]

       On October 4, 2021, the Court entered an agreed upon Consent Judgment and Injunction.[2]

As part of the relief granted to FESSAR in the Consent Judgment, Mr. Pitts agreed to the following

conditions:

       Plaintiff agrees to submit his cell phones, computers, and any other electronic
       devices, including but not limited to his broken cell phone, his personal cell phone,
       his RAP phone, and his computer, to a third party retained by FESSAR for forensic
       examination within thirty (30) days from the date of entry of this Consent

---

[1]   Prelim. Inj. Order (Doc. 40); *see also* Oct. 4, 2021 Hr'g Tr. (Doc. 75).

[2]   Consent J. & Inj. (Doc. 68).

Judgment, with said cell phones, computers, and other electronic devices to be timely returned to Plaintiff subsequent to forensic examination.

Plaintiff agrees that if the above-described forensic examination reveals FESSAR's proprietary information, or any other documents and information obtained by Plaintiff as the result of his employment with FESSAR, such documentation or information will be promptly deleted from the devices by the party performing the forensic examination.[3]

The Injunction enjoined Mr. Pitts from, among other things:

Using any of the confidential information described in the Noncompetition Agreement.  This includes any non-public information of or relating to FESSAR, or otherwise used by FESSAR in connection with its business, including data, information relating to customers, vendors, suppliers, or personnel (and relationships therewith), contracts, customer files and records, employee compensation, marketing plans and strategies, pricing and purchasing policies and procedures, unique business practices, and any other trade secrets (under common law, under the Noncompetition Agreement, or as defined by applicable statute).[4]

On October 19, 2021, FESSAR engaged Matt Hollister, a forensic technologist for Pivot Legal Services, to conduct a forensic examination of Mr. Pitts's electronic devices.[5]  On October 25, 2021, Mr. Hollister received from Mr. Pitts three electronic devices—an iPhone, an Android cell phone, and a Chromebook laptop.[6]

With respect to the iPhone, Mr. Hollister determined that it had "been reset to its factory setting prior to delivery to Pivot."[7]  This factory reset removed "data located locally on the iPhone" and prevented Mr. Hollister from being able to access "iCloud, the Apple cloud storage and cloud computing service."[8]  iCloud allows "a user to store data from an Apple device onto a remote

---

[3]  *Id.* at 3.

[4]  *Id.* at 4.

[5]  Ex. 1 (Hollister Aff.) to FESSAR's Mot. to Compel (Doc. 73-1) ¶¶ 2–3.

[6]  *Id.* ¶ 4.

[7]  *Id.* ¶ 5.

[8]  *Id.* ¶ 6.

server."[9]   To access this data, login credentials are required.[10]   Mr. Pitts did not provide such credentials to Mr. Hollister.[11]   As such, Mr. Hollister was unable to determine whether Mr. Pitts had backed up FESSAR's proprietary information from the iPhone to iCloud, which could then be downloaded back onto the iPhone by Mr. Pitts after the forensic examination.[12]

With respect to the Android, Mr. Hollister noted that it "was severely damaged."[13]   It had "multiple impact locations on the front glass, water damage, and the battery had been punctured."[14] Based on his experience, Mr. Hollister believes that the Android was intentionally damaged.[15] (Based on the Court's experience with Mr. Pitts in this case, the Court agrees.)   This damage precluded Mr. Hollister from accessing data located on the Android.[16]   The Android is a Google device, which is capable of remotely storing data in a "cloud based remote storage platform" called Google Drive.[17]   Access to Google Drive requires Gmail login credentials.[18]   Mr. Pitts did not provide these credentials to Mr. Hollister.[19]   Without being able to access Mr. Pitts's Google Drive, Mr. Hollister cannot say whether Mr. Pitts uploaded FESSAR's proprietary information from the Android to Google Drive.

---

[9]   *Id.* ¶ 7.

[10]   *Id.*

[11]   *Id.*

[12]   *Id.*

[13]   *Id.* ¶ 8.

[14]   *Id.*

[15]   *Id.*

[16]   *Id.*

[17]   *Id.* ¶ 9.

[18]   *Id.*

[19]   *Id.*

With respect to the Chromebook—another Google device—it too "had seemingly been reset to its factory settings."[20]   Additionally, the Chromebook "runs on a web-based operating system rather than a local operating system."[21]   Mr. Hollister cannot determine whether any "data deleted from the Chromebook [remains saved] on a Google Drive without accessing" such Google Drive.[22]   As mentioned, Gmail login credentials from Mr. Pitts are required to access Google Drive.[23]   Mr. Pitts did not provide any login credentials.

The whole purpose of the forensic examination was to ensure Mr. Pitts no longer had electronic copies of FESSAR's proprietary information.   Mr. Pitts knew this.   In the October 4, 2021 hearing on FESSAR's Motion for Contempt of the June 11, 2021 Preliminary Injunction Order, Mr. Pitts testified as follows:

> Q. So my question for you is: Do you have an objection to some third party looking at your stuff to make sure FESSAR's stuff is gone?
>
> A. Absolutely not.
>
> Q. You don't have a problem with that?
>
> A. No, sir.[24]
>
> . . .
>
> A. You know, I would like—I wouldn't mind for a third party to go back.   They can go back and look.   If they find something, if they can delete it, it's fine with me.
>
> I don't—I don't really know exactly where all information could be stored.   I'm not a computer programmer or anything like that.   And I'm sure they can go through much easier—you know, much easier routes to complete the task.[25]

---

[20]   *Id.* ¶ 11.

[21]   *Id.*

[22]   *Id.*

[23]   *Id.*

[24]   Oct. 4, 2021 Hr'g Tr. (Doc. 75) at 28:7–12.

[25]   *Id.* at 48:16–23.

. . .

A. I'm just saying that, based on my level of technological understanding, there could possibly be something somewhere that I don't—you know, that I haven't come across yet.[26]

Given the state of the devices Mr. Pitts provided to FESSAR on October 25, 2021, the forensic examination could not accomplish its clear objective without access to Mr. Pitts's iCloud and Gmail credentials. On or about October 27 and 28, 2021, FESSAR asked Mr. Pitts to provide both his iCloud and Gmail credentials.[27] Mr. Pitts responded by saying that neither the Consent Judgment nor the Injunction required him to provide credentials to the various platforms.[28]

On November 8, 2021, FESSAR filed a Motion to Compel Compliance with the Consent Judgment and Injunction.[29] FESSAR argued that, to give effect to the Consent Judgment and Injunction, Mr. Pitts should be compelled to provide his iCloud and Gmail login credentials.[30] FESSAR persuasively explained that limiting the forensic investigation to "local hard drives" (which Mr. Pitts most likely wiped) "would allow Mr. Pitts to circumvent" the Consent Judgment and Injunction by simply storing FESSAR's proprietary information on the cloud instead of on his devices.[31]

Mr. Pitts did not timely respond to FESSAR's Motion.[32] The due date for a response was November 25, 2021. On December 9, 2021, Mr. Pitts "called chambers and asked for an extension

---

[26] *Id.* at 49:6–8.

[27] Ex. 4 to FESSAR's Mot. to Compel (Doc. 73-4) at 9–11.

[28] *Id.* at 1.

[29] FESSAR's Mot. to Compel (Doc. 73).

[30] Br. in Supp. of FESSAR's Mot. to Compel (Doc. 74) at 8.

[31] *Id.* (internal quotations omitted).

[32] Dec. 20, 2021 Order (Doc. 77) at 1.

of time to respond."[33]  The Court allowed Mr. Pitts until December 13, 2021, to file a response.[34]

Mr. Pitts did not do so.[35]

On December 20, 2021, the Court entered an Order granting in part FESSAR's Motion to

Compel.[36]  The Court explained that its "Consent Judgment and Injunction cannot be sidestepped

by Mr. Pitts."[37]  The Court ordered Mr. Pitts to provide to FESSAR his login credentials for any

cloud-based storage accounts, including his iCloud and Gmail credentials.[38]  Unfortunately, in the

five months since the Court issued the Order, Mr. Pitts has flatly refused to follow the Court's

directive.[39]  He appears to believe that he need not follow an explicit Order from the Court if he

disagrees with it.  And he appears to believe the December 20, 2021 Order is wrong because "[t]he

consent judgment . . . does not mention any consent or literature pertaining to or acknowledging

discussions, requests or agreements made regarding information that resides anywhere other than

the three devices that are specifically listed and outlined within the detailed document."[40]

Mr. Pitts's position has two enormous flaws.  First, Mr. Pitts is required to follow Court

orders even if he disagrees with them.  Mr. Pitts does not get to "anoint [himself] with the power

to adjudge the validity of orders to which [he is] subject."[41]  Second, Mr. Pitts's hyper-technical

"gotcha" analysis of the wording of the Consent Judgment and Injunction flies in the face of the

---

[33]  *Id.*

[34]  *Id.*

[35]  *Id.*

[36]  *Id.*

[37]  *Id.*

[38]  *Id.*

[39]  *See* FESSAR's Mot. for Sanctions (Doc. 78).

[40]  Ex. 3 to FESSAR's Mot. for Sanctions (Doc. 78-3) at 2.

[41]  *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (citing *United States v. United Mine Workers*, 330 U.S. 258, 290 n.56 (1947)).

whole point of including a forensic examination in the parties' agreement.  Mr. Pitts cannot so easily dupe the other side or the Court.

The Consent Judgment and Injunction were designed for Mr. Pitts to (1) prove that he had "purged all of FESSAR's protected information in his possession,"[42] and (2) stop Mr. Pitts from disseminating or otherwise using any of FESSAR's confidential information.  Mr. Pitts's handling of his electronic devices prior to submitting them for forensic examination severely undermines both goals.  On the one hand, FESSAR cannot know whether Mr. Pitts still has its proprietary information (a prime form of relief FESSAR obtained in the Consent Judgment).  On the other, if Mr. Pitts is still in possession of FESSAR's proprietary information, he can use this cloud-storage maneuver to continue to violate the portion of the Injunction enjoining him from using any of FESSAR's proprietary information.  This is not tenable.  And it is time for the shell game to end.

Out of an extreme abundance of caution, the Court supplements the previously entered Injunction as follows.  Mr. Pitts must immediately provide the credentials to any and all cloud-based storage accounts associated with all of his electronic devices, including but not limited to his iCloud and Gmail credentials, Dropbox credentials, and raphub.net credentials.   These credentials should be provided to Rachel E. Hildebrand of the Barber Law Firm PLLC with the understanding that these credentials may not be shared with, or otherwise accessed by, any other individual or entity, except for Matt Hollister, Lead Forensic Technologist at Pivot Legal Services ("Pivot").  These credentials will be used only in a manner consistent with the Consent Judgment, Injunction, and Supplemental Injunction, and will be immediately disposed of subsequent to the completion of Pivot's forensic examination.[43]  Pivot will provide the Court with the results of its

---

[42]  June 11, 2021 Order (Doc. 40) at 24.

[43]  "Credentials" means username, password, and any other information or act necessary to access iCloud and Google Drive (or any other cloud-based storage or Dropbox or other email system), including but not limited to executing

forensic examination for the Court to review *in camera* and will not disclose the results to anyone else until the Court directs such disclosure.  Pivot will inform the Court of what information it believes is FESSAR's confidential, proprietary information and thus should be deleted; the Court will then determine if such deletion may occur.

To be clear, this Supplemental Injunction is an addition to the Consent Judgment and Injunction entered on October 4, 2021.  This supplement to the Injunction should come as no surprise to Mr. Pitts.  It substantially tracks the Court's December 20, 2021 Order granting in part FESSAR's Motion to Compel Compliance with the Consent Judgment and Injunction.[44]

IT IS SO ORDERED this 20th day of May 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

a two-step verification process and answering any required security questions.

[44] *See* Dec. 20, 2021 Order (Doc. 77) at 1–2.  This supplement to the Injunction was added during a May 20, 2022 Show Cause hearing in which Mr. Pitts was ordered to show cause why he should not be incarcerated for civil contempt.  At the Court's invitation, the Motion to Supplement was made orally by FESSAR.  The Court shortened the time for a response and required Mr. Pitts to respond orally.  Mr. Pitts had no objection to this supplement to the Injunction.  The Court then considered the matter and issued this supplement to the Injunction.