**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**RYAN PITTS**                                                        **PLAINTIFF**

**v.**                                  **Case No. 4:21-cv-75-LPR**

**FIRE EXTINGUISHER SALES &**
**SERVICES OF ARKANSAS, LLC,**
**and WALTER MYERS SIMPSON**                          **DEFENDANTS**


**FIRE EXTINGUISHER SALES &**
**SERVICES OF ARKANSAS, LLC**                    **COUNTER-CLAIMANT**

**v.**

**RYAN PITTS**                                            **COUNTER-DEFENDANT**

## ORDER

This action began as a run-of-the-mill Fair Labor Standards Act case.  It did not remain run-of-the-mill long.  As the Court will explain below, Plaintiff Ryan Pitts's repeated deceitful and obstreperous conduct has severely undermined this litigation.  To address that conduct, FESSAR has moved for sanctions against Mr. Pitts, including default judgment against Mr. Pitts on FESSAR's counterclaims.[1]  FESSAR argues that default judgment is proper based on Mr. Pitts's failure to comply with numerous Court Orders, especially the Court's Order granting in part FESSAR's Motion to Compel.[2]  The Court agrees.

## BACKGROUND[3]

"FESSAR sells, services, and installs fire extinguishers and fire suppression systems, including but not limited to restaurant suppression systems, vehicle fire suppression systems, and

---

[1]   FESSAR's Mot. for Sanctions (Doc. 78).

[2]   *Id.* at 1.

[3]   All of the facts in this Order are found by clear and convincing evidence.

clean agent systems."[4]  "Mr. Pitts worked for FESSAR as a Fire Suppression Technician from February 2012 until December 2020."[5]

On January 26, 2021, Mr. Pitts sued FESSAR and Walt Simpson, FESSAR's owner, alleging violations of the Fair Labor Standards Act (FLSA) and the Arkansas Minimum Wage Act (AMWA).[6]  On April 19, 2021, FESSAR answered Mr. Pitts's Complaint and filed numerous counterclaims against Mr. Pitts.[7]  Under federal law, FESSAR alleged that Mr. Pitts violated the Defense of Trade Secrets Act.[8]  Under Arkansas state law, FESSAR alleged that Mr. Pitts (1) committed the tort of conversion, (2) breached a Noncompetition Agreement, (3) and violated the Arkansas Trade Secrets Act.[9]

FESSAR filed a Motion for Preliminary Injunction.[10]  While the Motion for Preliminary Injunction was pending, FESSAR filed a Motion for a Temporary Restraining Order.[11]  That

---

[4]  Order Granting Prelim. Inj. (Doc. 40) at 2 (citing Ex. 1 (Aff. of Heather Drew) to Mot. for TRO (Doc 23-1) ¶ 3).

[5]  *Id.* at 2–3 (first citing Pl.'s Compl. (Doc. 1) ¶ 23; then citing Ex. 1 (Aff. of Heather Drew) to Mot. for TRO (Doc 23-1) ¶ 8; and then citing May 28, 2021 Hr'g Tr. at 50–51, 58–59).

[6]  Pl.'s Compl. (Doc. 1).  At this time, Mr. Pitts was represented by counsel.

[7]  FESSAR's Answer & Counterclaim (Doc. 2) ¶¶ 12–47.

[8]  FESSAR's Answer & Counterclaim (Doc. 2) ¶¶ 35–47.  In the Court's Order granting FESSAR's Motion for a Temporary Restraining Order, the Court noted that FESSAR's counterclaims were *permissive* counterclaims.  Order Granting TRO (Doc. 27) at 6.  The counterclaims thus required "an independent basis for subject matter jurisdiction."  *Id.* at 7.  The Court explained that "[t]he sole federal claim—brought pursuant to the Defense of Trade Secrets Act—require[d] a showing that the misappropriated trade secrets relate to products or services used in, or intended for use in, interstate commerce."  *Id.*  The Court concluded that, as pleaded, FESSAR's federal counterclaim did not allege an interstate nexus and thus could not provide a basis for subject matter jurisdiction.  *Id.*  Nevertheless, the Court allowed FESSAR to amend its counterclaim because it was "pretty clear from the sworn affidavit of FESSAR's general manager, Heather Drew, that FESSAR [could] amend its [c]ounterclaim to state a viable Defense of Trade Secrets Act."  *Id.*  FESSAR amended its counterclaim to add allegations about FESSAR's interstate activities.  *See* FESSAR's Answer & Am. Counterclaim (Doc. 29) ¶¶ 5–6 (alleging that FESSAR "services clients in both Arkansas and Mississippi" and that FESSAR "operates an e-commerce website" that "sells supplies and products across the continental United States").  FESSAR's new allegations are enough to establish the necessary interstate nexus to state a viable claim under the federal Defense of Trade Secrets Act.  The Court thus has subject matter jurisdiction over the federal counterclaim.  The Court exercises supplemental jurisdiction over FESSAR's "related" state law claims.  28 U.S.C. § 1367(a).

[9]  FESSAR's Answer & Counterclaim (Doc. 2) ¶¶ 12–34.

[10]  FESSAR's Mot. for Prelim. Inj. (Doc. 3).

[11]  FESSAR's Mot. for TRO (Doc. 23).

Motion asked the "Court [to] enter a temporary restraining order restraining [Mr. Pitts] from using 'confidential information, proprietary, and/or specialized information and trade secrets until'" the Court decided the Motion for Preliminary Injunction.[12]  Based on the *Dataphase* factors and the Court's factual findings, the Court concluded that temporary injunctive relief was appropriate.[13]  The terms of the Temporary Injunction are set out, in part, below:

> Mr. Pitts is temporarily enjoined from opening, looking at, forwarding, relying on, copying, or in any way utilizing FESSAR's customer lists, company prices, and quotes, which he emailed to himself on December 10, 2020.  Mr. Pitts is further enjoined from using any of the confidential information described in the Noncompetition Agreement.  This includes any nonpublic information of or relating to FESSAR, or otherwise used by FESSAR in connection with its business, including data, information relating to customers, vendors, suppliers or personnel (and relationships therewith), contracts, customer files and records, employee compensation, marketing plans and strategies, pricing and purchasing policies and procedures, unique business practices, and any other trade secrets (under common law, under the Agreement, or as defined by applicable statute).

> Mr. Pitts is temporarily enjoined from directly or indirectly soliciting any customer of FESSAR; inducing or attempting to induce any customer of FESSAR to terminate, reduce, restrict, or otherwise limit the level or type of business conducted with FESSAR; and from otherwise interfering in any other way with the relationship between FESSAR and any customer.

> Mr. Pitts is temporarily enjoined from the operation of Rapid Action Protection, LLC, or any other competing business, and from employment with any other competing business, within a 150-mile radius of FESSAR's headquarters in Pine Bluff, Arkansas.  But because FESSAR does not purport to do business in Louisiana or Tennessee, or purport to be contemplating doing business in those states, Mr. Pitts will not be enjoined from operating such a business or working for such a business in Louisiana or Tennessee, even if it is within the prescribed 150-mile radius, so long as such business does no work in Arkansas or Mississippi within the 150-mile radius.[14]

---

[12]  Order Granting TRO (Doc. 27) at 1.

[13]  *Id.* at 6–14.

[14]  *Id.* at 15.

The injunction was effective immediately and was set to expire in fourteen days from the date of

the Order (May 17, 2021).  On May 28, 2021, the Court held a hearing on FESSAR's Motion for

Preliminary Injunction.[15]  The same day, the Court extended the TRO until June 14, 2021.[16]

On June 11, 2021, the Court granted FESSAR's Motion for Preliminary Injunction.[17]  The

terms of the Preliminary Injunction are set out, in part, below:

> 1.      For the pendency of this litigation, Mr. Pitts is enjoined from opening,
> looking at, forwarding, relying on, copying, or in any way utilizing FESSAR's
> customer lists, company prices, and quotes, which he emailed to himself on
> December 10, 2020.  Mr. Pitts is further ordered to immediately purge all of
> FESSAR's protected information in his possession, specifically including the data
> that was downloaded in the early morning hours of December 10, 2020.  Mr. Pitts
> is also ordered to provide a certification, via declaration under oath, that all copies
> of FESSAR's protected information, in either physical or electronic form, have
> been permanently destroyed and/or deleted and that Mr. Pitts no longer has access
> to the protected information in any way.  Mr. Pitts is ordered to identify in the
> declaration all persons or entities to whom he distributed, or who in any way had
> access to, FESSAR's protected information.  If no other individual or entity was
> given or had access to the protected information, Mr. Pitts is ordered to certify in
> his declaration that he did not disclose, send the files to, or share the protected
> information with anyone or allow any other person or entity to view or access the
> files directly or indirectly.  If there is any indication that some third party had
> unauthorized access to FESSAR's protected information, Mr. Pitts shall identify
> that third party in his declaration and provide all such facts related to the
> unauthorized access.  Mr. Pitts must file this declaration within 21 days of this
> Order.
>
> 2.      For the pendency of this litigation, Mr. Pitts is enjoined from using any of
> the confidential information described in the Noncompetition Agreement.  This
> includes any non-public information of or relating to FESSAR, or otherwise used
> by FESSAR in connection with its business, including data, information relating to
> customers, vendors, suppliers or personnel (and relationships therewith), contracts,
> customer files and records, employee compensation, marketing plans and
> strategies, pricing and purchasing policies and procedures, unique business
> practices, and any other trade secrets (under common law, under the Agreement, or
> as defined by applicable statute).

---

[15]  Clerk's Minutes (Doc. 30).

[16]  Order (Doc. 31).

[17]  Order Granting Prelim. Inj. (Doc. 40) at 2.

3.      For the pendency of this litigation, Mr. Pitts is enjoined from directly or indirectly soliciting any of FESSAR's customers; inducing or attempting to induce any of FESSAR's customers to terminate, reduce, restrict, or otherwise limit the level or type of business conducted with FESSAR; and from otherwise interfering in any other way with the relationship between FESSAR and any customer.

4.      For the pendency of this litigation, Mr. Pitts is enjoined from the operation of RAP, or any other competing business, and from employment with (or in any way working with) any other competing business, within a 150-mile radius of FESSAR's headquarters in Pine Bluff, Arkansas.  But because FESSAR does not purport to do business in Louisiana or Tennessee, or purport to be contemplating doing business in those states, Mr. Pitts will not be enjoined from operating such a business or working for such a business in Louisiana or Tennessee, even if it is within the prescribed 150-mile radius, so long as such business does no work in Arkansas or Mississippi within the 150-mile radius.[18]

The Preliminary Injunction was effective immediately.

On September 9, 2021, FESSAR filed a Motion for Contempt.[19]  FESSAR pointed out that Mr. Pitts was in violation of the Preliminary Injunction because he failed to certify by declaration under oath that he had purged all of FESSAR's proprietary, confidential information then in his possession.[20]  The Preliminary Injunction mandated that Mr. Pitts submit such certification within twenty-one days of the June 11, 2021 Order.

FESSAR also contended that Mr. Pitts violated the Preliminary Injunction by inducing Little Rock Christian Academy to terminate its longtime relationship with FESSAR.[21]  According to FESSAR, Little Rock Christian Academy had been FESSAR's customer "for nearly a decade."[22]  Testimony from a Little Rock Christian Academy representative, Eric Schmidt, indicated that Mr. Schmidt reached out to Mr. Pitts to schedule fire extinguisher services in late July of 2021.[23]  When

---

[18]  *Id.* at 24–26.

[19]  FESSAR's Mot. for Contempt (Doc. 55).

[20]  Br. in Supp. of FESSAR's Mot. for Contempt (Doc. 56) at 2–3.

[21]  *Id.* at 9.

[22]  *Id.* at 1.

[23]  Ex. 2 (Schmidt Dep.) to FESSAR's Mot. for Contempt (Doc. 55-2) at 10:8–9.

the two spoke, Mr. Pitts told Mr. Schmidt that he no longer worked for FESSAR.[24]  In a nutshell, Mr. Pitts told Mr. Schmidt that FESSAR "did him wrong."[25]  Mr. Schmidt testified that Mr. Pitts never mentioned his litigation with FESSAR or the Court's Preliminary Injunction.[26]  Mr. Schmidt further testified that he asked Mr. Pitts for a recommendation, and Mr. Pitts recommended Matt Neeper.[27]  According to Mr. Schmidt, Mr. Pitts and Mr. Neeper then spent a day in August of 2021 servicing Little Rock Christian Academy's fire extinguishers.[28]

The Court ordered Mr. Pitts to respond to FESSAR's well-supported Motion for Contempt. Mr. Pitts filed a less-than-one-page response that was nothing more than a bare denial.[29]  On

---

[24]  *Id.* at 10:11–13.

[25]  *Id.* at 11:8–10.

[26]  *Id.* at 13:18–14:18.

[27]  *Id.* at 11:23–12:1.

[28]  *Id.* at 16:21–17:25; *see also* Ex. 3 to FESSAR's Mot. for Contempt (Doc. 55-3) (showing a bill dated August 13, 2021, from Neeper's Fire Protection to Little Rock Christian Academy for fire extinguisher services).  Recently, on July 22, 2022, FESSAR filed its Supplement to Motion for Contempt.  Suppl. Mot. for Contempt (Doc. 98). According to the Supplement, in July of 2021, Mr. Pitts performed fire extinguisher services for FESSAR's customer, Meadow View Apartments, in Clarksville, Arkansas.  *Id.* at 1.  As evidence of this, FESSAR provided an Affidavit from Heather Drew, FESSAR's General Manager.  *Id.* at 2; *see also* Drew Aff. (Doc. 98-1) at 1.  Ms. Drew testified that FESSAR serviced the apartments on July 21, 2022.  *Id.*  On that day, a FESSAR service technician informed her that the apartments had been serviced in July of 2021 by Mr. Pitts's company, Rapid Action Protection, LLC.  *Id.* at 1–2.  According to Ms. Drew, the technician took a picture of a tag attached to a fire extinguisher at the apartments.  *Id.* at 2.  The tag bears Mr. Pitts's signature and indicates that an inspection occurred in July of 2021.  Ex. A to Drew Aff. (Doc. 98-1) at 3; *see also* Aug. 8, 2022 Hr'g Tr. at 30 (Mr. Pitts not disputing that the signature on the tag was his).  The tag also has the company name "Rapid Action Protection, LLC."  Ex. A to Drew Aff. (Doc. 98-1) at 3.

[29]  Mr. Pitts's Resp. to FESSAR's Mot. for Contempt (Doc. 58).  At this time, Mr. Pitts's counsel had already tried to withdraw from the case.  Mot. to Withdraw (Doc. 53).  On September 8, 2021, Mr. Pitts's attorneys, April Rheaume and Josh Sanford of the Sanford Law Firm, PLLC, moved to withdraw as counsel for Mr. Pitts, stating that "[t]here has been a breakdown of the professional relationship between undersigned counsel and Plaintiff."  *Id.*.  On the same date, the Court entered an Order stating that Mr. Pitts's counsel would be allowed to withdraw only under certain circumstances, including if Mr. Pitts informs the Court that he wishes to proceed *pro se* and the Court is satisfied that current counsel has provided all necessary information to Pitts.  Sept. 8, 2021 Text Order (Doc. 54). On September 24, 2021, Mr. Pitts's counsel filed a Renewed Motion to Withdraw, stating that Mr. Pitts did not oppose their withdrawal and that Mr. Pitts desired to represent himself.  Renewed Mot. to Withdraw (Doc. 59). The Court granted this Motion.  Sept. 27, 2021 Text Order (Doc. 61).  Subsequently, it appeared that Mr. Pitts wished Mr. Sanford to continue representation of Mr. Pitts on the contempt issue.  At the September 30, 2021 hearing, the Court requested that Mr. Sanford represent Mr. Pitts solely for purposes of the Motion for Contempt. *See* Clerk's Minutes (Doc. 63).

September 30, 2021, the Court tried to hold a hearing on the Motion for Contempt.[30]  The hearing did not get far.  Based on concerns with Mr. Pitts's understanding of the contempt proceedings, and problems between Mr. Pitts and his counsel, the Court rescheduled the hearing to allow Mr. Pitts's counsel time to prepare.[31]

On October 1, 2021, Mr. Pitts submitted a declaration under penalty of perjury.[32]  In this declaration, Mr. Pitts stated that, on June 14, 2021, his counsel sent him a copy of the Court's Order granting FESSAR's Motion for Preliminary Injunction.[33]  In any event, Mr. Pitts said that he and his counsel discussed the Order at length on the same day.[34]  According to Mr. Pitts, on or around September 9, 2021, he had "deleted every email" that he had sent to himself on December 10, 2020.[35]  Mr. Pitts said that there "were approximately ten emails" deleted.[36]  Mr. Pitts also explained that he was not "technically inclined."[37]

On October 4, 2021, the Court held the rescheduled hearing on FESSAR's Motion for Contempt.[38]  During the hearing, the parties entered into an agreement, which was memorialized in a Consent Judgment on the Motion for Contempt and Injunction.[39]  In the Consent Judgment and Injunction, Mr. Pitts agreed to "the dismissal with prejudice of [his] claims against Defendants

---

[30]  Clerk's Minutes (Doc. 63).

[31]  *Id.*

[32]  Pl.'s Decl. (Doc. 66).

[33]  *Id.* at 1.

[34]  *Id.*

[35]  *Id.* at 2.

[36]  *Id.*

[37]  *Id.*

[38]  Clerk's Minutes (Doc. 67).

[39]  Oct. 4, 2021 Hr'g Tr. at 54–60; *see also* Consent J. & Inj. (Doc. 68).

under the [FLSA] and the [AMWA]."[40]   The Consent Judgment and Injunction also provided in

part:

> Plaintiff agrees to submit his cell phones, computers, and any other electronic
> devices, including but not limited to his broken cell phone, his personal cell phone,
> his RAP phone, and his computer, to a third party retained by FESSAR for forensic
> examination within thirty (30) days from the date of entry of this Consent
> Judgment, with said cell phones, computers, and other electronic devices to be
> timely returned to Plaintiff subsequent to forensic examination.[41]

The Consent Judgment and Injunction also included a Permanent Injunction.   Based on the

Permanent Injunction, Mr. Pitts was enjoined from, among other things:

> using any of the confidential information described in the Noncompetition
> Agreement.   This includes any non-public information of or relating to FESSAR,
> or otherwise used by FESSAR in connection with its business, including data,
> information relating to customers, vendors, suppliers, or personnel (and
> relationships therewith), contracts, customer files and records, employee
> compensation, marketing plans and strategies, pricing and purchasing policies and
> procedures, unique business practices, and any other trade secrets (under common
> law, under the Noncompetition Agreement, or as defined by applicable statute).[42]

The Consent Judgment and Injunction was filed on the same day of the hearing.   From that point

on, Mr. Pitts has been proceeding *pro se*.   His lawyers withdrew, citing "a breakdown of the

professional relationship" between Mr. Pitts and his lawyers.[43]

On October 25, 2021, Mr. Pitts provided some of his electronic devices to FESSAR's

forensic technologist, Matt Hollister.[44]   Mr. Hollister discovered that the devices were either reset

to factory settings or intentionally damaged to the point of uselessness.[45]   On November 8, 2021,

---

[40]   Consent J. & Inj. (Doc. 68).

[41]   *Id.* at 3.

[42]   *Id.* at 4.

[43]   Mot. to Withdraw (Doc. 53) at 1.

[44]   Suppl. Inj. (Doc. 84) at 2.

[45]   *Id.* at 2–4.

FESSAR filed a Motion to Compel Compliance with the Consent Judgment and Injunction.[46]  Mr. Pitts did not respond to this Motion—despite the Court's allowing Mr. Pitts an extension to do so.[47]  FESSAR argued that, to effectuate the Consent Judgment and Injunction, "Mr. Pitts should be compelled to provide his iCloud and Gmail login credentials."[48]  FESSAR further argued that "Mr. Pitts['s] refusal to provide this access also constitutes a failure to fully respond to FESSAR's written discovery requests pursuant to the Federal Rules of Civil Procedure."[49]

On December 20, 2021, the Court granted in part FESSAR's Motion to Compel.[50]  The Court gave Mr. Pitts fourteen days to provide FESSAR his login credentials for any cloud-based storage accounts, including his iCloud and Gmail credentials.[51]  The Court warned Mr. Pitts that failure to comply with this Order could result "in entry of default judgment in FESSAR's favor, and other sanctions, including" "incarceration if the Court concludes that this is the only viable way of achieving compliance with its Orders."[52]

Mr. Pitts did not comply with this Order.  On January 6, 2022, FESSAR filed the pending Motion for Sanctions.[53]  Mr. Pitts did not respond.  FESSAR argued that Mr. Pitts's failure to comply with the Court's December 20, 2021 Order justified entry of default judgment.[54]  Because default judgment is a harsh remedy, the Court held off on FESSAR's Motion.  Instead, on April

---

[46]  FESSAR's Mot. to Compel (Doc. 73).

[47]  Suppl. Inj. (Doc. 84) at 5–6.

[48]  *Id.* at 4.

[49]  FESSAR's Mot. to Compel (Doc. 73) at 1.  Even though the Consent Judgment and Injunction ended Mr. Pitts's case against FESSAR, discovery was ongoing with respect to FESSAR's counterclaims against Mr. Pitts.  *See supra* p. 2.

[50]  Dec. 20, 2021 Order (Doc. 77) at 1–2.

[51]  *Id.*

[52]  *Id.* at 2.

[53]  FESSAR's Mot. for Sanctions (Doc. 78).

[54]  Br. in Supp. of FESSAR's Mot. for Sanctions (Doc. 79) at 2–5.

11, 2022, the Court issued an Order to Show Cause.[55]   The Court ordered Mr. Pitts to appear in person to show cause why (1) he should not be incarcerated for civil contempt; (2) the Court should not enter a default judgment on liability in favor of FESSAR on its remaining claim(s); and (3) the Court should not award FESSAR its fees and costs related to the Motion to Compel . . . and the Motion for Sanctions . . . ."[56]

On May 20, 2022, the Court held a show cause hearing.   At that hearing, Mr. Pitts admitted that he had not complied with the December 20, 2021 Order.[57]   Mr. Pitts (finally) agreed to turn over his iCloud and Gmail credentials.[58]   But then Mr. Pitts told the Court, "I really honestly . . . don't recall them."[59]   Mr. Pitts said that he hadn't looked at the credentials since FESSAR took his devices (back in October of 2021).[60]   Mr. Pitts said that he "cannot recall" which passwords were which.[61]   He did give FESSAR's counsel a few password options to try.[62]   None worked.[63] Indulging the hope that Mr. Pitts's attempts to resolve this issue were genuine, the Court scheduled another hearing for the following week.[64]   The Court directed Mr. Hollister (FESSAR's forensic technologist) to attend to help Mr. Pitts get into his accounts.

---

[55]   Apr. 11, 2022 Order (Doc. 80).

[56]   *Id.*

[57]   May 20, 2022 Hr'g. Tr. at 2.

[58]   *Id.* at 14.

[59]   *Id.*

[60]   *Id.* at 16; *see also* Suppl. Inj. (Doc. 84) (explaining that Mr. Pitts turned over his devices to Mr. Hollister on October 25, 2021).

[61]   May 20, 2022 Hr'g Tr. at 19.

[62]   *Id.* at 17–18.

[63]   *Id.* at 19, 22.   FESSAR's counsel also learned that Mr. Pitts's Gmail "account was recently deleted and may be recoverable." *Id.* at 20.   Mr. Pitts denied deleting this account. *Id.* at 20–21.   Based on Mr. Pitts's conduct during this case, the Court is convinced that Mr. Pitts deleted his Gmail account.

[64]   *Id.* at 32–33.

10

On May 25, 2022, the Court held part two of the show cause hearing.  With respect to the iCloud credentials, Mr. Pitts still did not know the password.[65]  But that issue was resolved when it became apparent that FESSAR already had what it needed to get into the iCloud account.[66]  With respect to the Gmail credentials, Mr. Pitts provided to Mr. Hollister the username and correct password.[67]  But there was a hitch.  Because Mr. Hollister was using a device that had never been used to access Mr. Pitts's Gmail account, a two-factor authentication was required.[68]  From what Mr. Hollister could tell, a Blu View 2 Tracfone was tied to the Gmail account.[69]  Mr. Hollister thus needed the Blue View 2 Tracfone to complete the two-factor authentication process.[70]  Mr. Pitts denied having the Blue View 2 Tracfone.[71]  Mr. Pitts specifically said that he did not recall that phone and did not know who had it.[72]

During a colloquy with the Court, Mr. Pitts asserted that his wife (Casey[73]) managed to figure out Mr. Pitts's Gmail password.[74]  Mr. Pitts said he didn't know how she figured out the

---

[65] May 25, 2022 Hr'g Tr. at 3.

[66] *Id.* at 3–6.  At the hearing, Mr. Hollister attempted to bypass Mr. Pitts's iCloud password to reset the password.  *Id.* at 3.  In so attempting, Mr. Hollister learned the last two digits of the phone number linked to Mr. Pitts's iCloud account.  *Id.*  The phone tied to that number would enable Mr. Hollister to reset the password.  *Id.*  It came out at the hearing that the phone number was actually linked to a device owned by FESSAR.  *Id.*  Thus, FESSAR had what it needed to reset the password and gain access to Mr. Pitts's iCloud account.  *Id.* at 5.

[67] *Id.* at 6.

[68] *Id.* at 7.

[69] *Id.* at 7–8.

[70] *Id.* at 7.

[71] *Id.* at 9.

[72] *Id.* at 9, 14.  As the hearing moved on, the Court learned that Mr. Pitts had numerous Tracfones at his home.  *Id.* at 14.  Mr. Pitts again told the Court that the specific Blu View 2 Tracfone required to access the Gmail account was not one of the Tracfones he had at home.  *Id.*

[73] At the hearing, Mr. Pitts said that his wife filed for divorce earlier in the year.  This was true.  *See Cassandra N. Pitts v. Ryan A. Pitts*, Case No. 23DR-22-73.  Casey Pitts filed a petition for divorce on January 21, 2022.  At the hearing, Casey preferred for the Court to refer to her by her first name.  In keeping with that preference, the Court does so in this Order.

[74] May 25, 2022 Hr'g Tr. at 8.

password.[75]  Mr. Pitts said that figuring out the password "seems pretty complicated."[76]  Mr. Pitts said Casey "confirmed" the correct password for his Gmail account.[77]  The Court then asked Mr. Pitts if Casey would be able to assist in getting to the bottom of the outstanding access issue.[78]  Mr. Pitts said she might be able to assist.  Mr. Pitts then gave what he claimed was Casey's cellphone number to Mr. Hollister.[79]  Mr. Hollister called that number.[80]  Mr. Hollister said that it appeared that Casey's phone was turned off.[81]  Mr. Hollister then tried to call Casey at her work.[82]  Mr. Hollister learned that she was working from home.[83]  At this time in the hearing, Casey could not be reached.

In an attempt to explore potential alternative avenues to obtain a device to gain access to the Gmail account, the Court probed a bit deeper into the circumstances surrounding how and when Mr. Pitts received the Gmail password from Casey.[84]  According to Mr. Pitts, Casey called Mr. Pitts's boss to speak with Mr. Pitts.[85]  Mr. Pitts said the call happened after the May 20, 2022 hearing.[86]  In an about face, Mr. Pitts then told the Court that he was the one who initiated this call.[87]  Regardless, Mr. Pitts said Casey gave him the password during their son's ballgame on the

---

[75] *Id.* at 8–9.

[76] *Id.*

[77] *Id.* at 9.

[78] *Id.* at 10.

[79] *Id.* at 11.

[80] *Id.* at 12.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 13.

[84] *Id.* at 20.

[85] *Id.* at 21.

[86] *Id.* at 22.

[87] *Id.*

night of May 20, 2022.[88] Mr. Pitts told the Court that he was not sure how Casey got the password. He said that, unlike himself, Casey had "wifi" and knew about computers.[89]

Because of Mr. Pitts's wavering on simple details (like who initiated the alleged call he had with Casey on May 20, 2022), the Court had a telephone conversation with Mr. Pitts's boss, Wade Tucker.[90] Mr. Tucker told the Court that Mr. Pitts regularly used Mr. Tucker's phone but that he did not specifically remember whether Mr. Pitts did so with respect to the password issue.[91] The Court then asked Mr. Tucker for Casey's telephone number.[92] Mr. Tucker gave the Court the number he had for her.[93] The Court asked Mr. Hollister (FESSAR's forensic technologist) if that was the same number Mr. Pitts had given Mr. Hollister.[94] Mr. Hollister said that the number Mr. Pitts had given him was one digit off.[95]

Mr. Hollister called Casey at the phone number Mr. Tucker provided.[96] Lo and behold, she answered.[97] In a telephone conversation with the Court, Casey acknowledged giving Mr. Pitts potential passwords.[98] But she said that it was probably a month ago (which would have been well before the May 20, 2022 hearing).[99] Casey then said that she could have given possible passwords to Mr. Pitts at the May 20, 2022 ballgame.[100] However, Casey specifically told the Court that she

---

[88] *Id.*

[89] *Id.* at 20.

[90] *Id.* at 23–24.

[91] *Id.* at 27–28.

[92] *Id.* at 28.

[93] *Id.* at 29.

[94] *Id.*

[95] *Id.*

[96] *Id.* at 30.

[97] *Id.*

[98] *Id.* at 32.

[99] *Id.*

[100] *Id.* at 33.

never found out which password option ended up being correct.[101]  The Court then apprised Casey of the two-factor-authentication issue, and she agreed to bring her work laptop and a number of devices from Mr. Pitts's house to the hearing in hopes that the devices may solve the two-factor-authentication issue.[102]

Casey came to the courthouse and brought her work laptop and six phones from Mr. Pitts's house.[103]  Although it was hoped that Google might recognize Casey's work laptop as a trusted device for Mr. Pitts's account (which means no two-factor authentication would be required to access his Gmail account from the laptop), the work laptop did not solve the authentication issue.[104]  Mr. Hollister did determine, however, that one of the phones Casey brought from Mr. Pitts's house appeared to be the Blu View 2 Tracfone linked to Mr. Pitts's Gmail account.[105]  (Yes, the one Mr. Pitts denied having.)

After charging the Tracfone and getting the wi-fi to work on the Tracfone, Mr. Hollister was finally able to access Mr. Pitts's Gmail account.[106]  Access to Mr. Pitts's Gmail account almost immediately blew up Mr. Pitts's narrative about his ability to access the Gmail account.  FESSAR called Mr. Hollister to the stand.[107]  Mr. Hollister testified that the Tracfone had been used to access Mr. Pitts's Gmail account multiple times on the morning of the hearing.[108]  Specifically, the Tracfone was used to sign in to Mr. Pitts's account at 4:21 a.m., 5:01 a.m., and 9:04 a.m.[109]

---

[101] *Id.*

[102] *Id.* at 34–41.

[103] *Id.* at 44.

[104] *Id.* at 48.

[105] *Id.*

[106] *Id.* at 49–51.

[107] *Id.* at 75.

[108] *Id.* at 76.

[109] *Id.* at 77.

The 5:01 a.m. sign in indicated that the password was changed.[110]  This information flew in the face of Mr. Pitts's representations to the Court.  It was now clear that Mr. Pitts had the Tracfone and used it just before the hearing.

The Court called Mr. Pitts to the stand.[111]  The Court told Mr. Pitts about his right to remain silent.[112]  The Court asked Mr. Pitts if he accessed the Gmail account at 4:21 a.m. that morning.[113]  Mr. Pitts invoked his Fifth Amendment right to remain silent.[114]  The Court asked Mr. Pitts if he accessed the account at 9:04 a.m. that morning.[115]  Mr. Pitts invoked his Fifth Amendment right to remain silent.[116]  The Court asked Mr. Pitts if he "had access to the [Tracfone] for the last couple of weeks and [had] been able to access it if [Mr. Pitts] wanted to."[117]  Mr. Pitts invoked his Fifth Amendment right to remain silent.[118]  The Court has no doubt that Mr. Pitts was the person who repeatedly used the Tracfone to access his Gmail account.

It gets worse for Mr. Pitts.  More specifically, he makes it worse for himself.  On May 27, 2022, Mr. Hollister submitted to the Court a letter along with screenshots from Mr. Pitts's Gmail account.  Mr. Hollister's letter explained that, "'[w]hile examining [Mr. Pitts's] Google account,' Mr. Hollister 'was able to determine that two prior Google Takeout instances had already occurred

---

[110] *Id.*

[111] *Id.* at 79.  Up until this part of the hearing, Mr. Pitts had been interacting with the Court "off the stand" in his capacity as a *pro se* litigant.  Thus, Mr. Pitts was not under oath while making the bulk of his assertions to the Court.  That doesn't mean that Mr. Pitts is somehow excused for his conduct while representing himself.

[112] *Id.* at 80.

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

on May 13, 2022, . . . and . . . on May 19, 2022.'"[119]  In a subsequent Order, the Court concluded

that Mr. Pitts "was behind both of these data extractions."[120]  In addition to the potential that these

extractions could circumvent the Injunction, they also "confirm[ed] . . . that Mr. Pitts had access

to his Google account in May of 2022."[121]  This evidence further confirms that Mr. Pitts was lying

when he claimed to not have access to his Gmail account at the May 20, 2022 hearing.

On a separate note, Mr. Hollister's letter also explained that he was "unable to download

the Google Takeout containing the Gmail emails flagged after running Mr. Pitts['s] account."[122]

This situation was due to "an unforeseen security feature within Google Account Security."[123]  To

be able to execute the required download, Mr. Hollister explained that he needed Mr. Pitts's Blu

View 2 Tracfone.[124]  "This hiccup [was] not on Mr. Pitts.  Mr. Hollister and FESSAR represented

at the end of the [May 25, 2022] hearing that they no longer needed the phone at issue."[125]

On June 3, 2022, the Court gave Mr. Pitts twenty-one days to (1) provide Mr. Hollister

with the necessary access to the Tracfone to facilitate Mr. Hollister's examination, (2) turn over

all information he obtained from the May 2022 Google Takeouts he performed, and (3) turn over

all the "Windows computer(s) used for extractions."[126]

---

[119] June 3, 2022 Order (Doc. 89) at 1–2 (quoting May 27, 2022 Hollister Letter (Doc. 88) at 1).

[120] *Id.* at 2.

[121] *Id.*

[122] May 27, 2022 Hollister Letter (Doc. 88) at 1.

[123] *Id.*

[124] *Id.*

[125] June 3, 2022 Order (Doc. 89) at 3.

[126] *Id.* at 1–3.  The Court gave Mr. Pitts seven days after he complied with these three directives to file a Declaration that the Court provided to Mr. Pitts.  *Id.* at 3; *see also* Ex. 1 to June 3, 2022 Order (Doc. 89-1).

Mr. Pitts did not fully comply with the Court's June 3, 2022 Order.  The Court knows this because, on June 24, 2022, Mr. Hollister sent the Court a letter.[127]  In the letter, Mr. Hollister explained that Mr. Pitts gave Mr. Hollister a package "containing [only] a Blu mobile device that appear[ed] to be the Blu[] View 2 Tracfone at issue in this matter."[128]  When Mr. Hollister received the Tracfone, the glass screen on the Tracfone was "completely destroyed."[129]  In a subsequent Order, the Court concluded that "Mr. Pitts intentionally destroyed the screen in an effort to thwart FESSAR's forensic examination."[130]  Additionally, the Court noted that Mr. Pitts had "not 'turn[ed] over for inspection the Windows computer(s) used for the [Google] extractions."[131]

On July 14, 2022, the Court entered an Order to Show Cause.[132]  The Court gave Mr. Pitts twenty-one days to (1) meet in person with Mr. Hollister to provide Mr. Hollister with the required access to the Tracfone, (2) "turn over to Mr. Hollister any and all electronic devices Mr. Pitts used to execute the Google extractions in May of 2022," (3) "turn over to Mr. Hollister any and all electronic storage devices upon which Mr. Pitts stored any information he extracted from Google," and (4) "turn over to Mr. Hollister any and all hard copies of the extracted information in Mr. Pitts's possession."[133]  The Court ordered that all of the above be done by Mr. Pitts before the date scheduled for another show cause hearing—August 8, 2022.

At the time of the hearing, Mr. Pitts had not provided Mr. Hollister with access to the Tracfone.[134]  Mr. Pitts had also failed to turn over any devices related to his attempted Google

---

[127] July 14, 2022 Order (Doc. 96) at 2; *see also* June 24, 2022 Hollister Letter (Doc. 97).

[128] July 14, 2022 Order (Doc. 96) at 2; *see also* June 24, 2022 Hollister Letter (Doc. 97).

[129] June 24, 2022 Hollister Letter (Doc. 97).

[130] July 14, 2022 Order (Doc. 96) at 2.

[131] *Id.* at 3.

[132] *Id.* at 1.

[133] *Id.* at 3–4.

[134] Aug. 8, 2022 Hr'g Tr. at 3, 44–45.

Takeouts.[135]  After the start of the hearing, Mr. Pitts provided Mr. Hollister with the necessary access to the Tracfone.[136]  However, with respect to producing the device or devices upon which he attempted to execute the May 2022 Google Takeouts, Mr. Pitts was not as forthcoming.

Mr. Pitts gave wildly varying accounts of the attempted Google Takeouts.  Initially, Mr. Pitts said that he had "no idea what devices could have been used to do the extractions or whatever it is that y'all are referring to."[137]  Instead, Mr. Pitts implied that Mr. Hollister's device is the one that was used for the attempted the Google Takeouts.[138]  But Mr. Hollister did not have access to Mr. Pitts's Gmail account at the time when the attempted Google Takeouts occurred.

Next, Mr. Pitts denied doing any Google Takeouts.[139]  Mr. Pitts explained that his independent Google research revealed that "it appears to be very, very simple" for "somebody to access [his] Google . . . ."[140]  When the Court pressed Mr. Pitts on this some-unnamed-person-accessed-my-account theory, Mr. Pitts said that he didn't know of any other explanation.[141]

Subsequently, in significant tension with his statements a few moments before, Mr. Pitts suggested that the attorney representing him in another matter potentially attempted the Google Takeouts.[142]  Mr. Pitts initially denied asking his attorney to download anything from his Gmail account.[143]  But he then said that what he and his attorney "were trying to do was get information

---

[135] *See id.* at 5.

[136] *See id.*

[137] *Id.*

[138] *Id.*

[139] *Id.* at 6–7.

[140] *Id.* at 7.

[141] *Id.*

[142] *Id.*

[143] *Id.*

that [they] thought that might be deleted from" the Gmail account.[144]   So, Mr. Pitts partially admitted to playing a role in the Google Takeouts.

Soon thereafter, Mr. Pitts came closer to admitting to attempting the Google Takeouts.[145] He explained that, upon learning that Mr. Hollister was charging $450 per hour, he "did everything [he] could to make sure our time here would be minimized."[146]   Perhaps Mr. Pitts was trying to suggest he wanted to extract the information from his Gmail account and give it to Mr. Hollister. In any event, this hold-down-the-cost excuse is clearly false.   Mr. Pitts only learned of Mr. Hollister's hourly rate at the May 20, 2022 hearing—after the attempted Google Takeouts occurred.

Finally, Mr. Pitts admitted to "looking into the extraction thing, and one time" attempting to perform a Google Takeout.[147]   Mr. Pitts explained that he gave up on the attempted Google Takeout when he learned that it would "take like eight days" to complete.[148]   Mr. Pitts denied completing the Google Takeout or downloading any information from the Google Takeout.[149] There is no evidence one way or the other that tells the Court whether the downloads were

---

[144] *Id.*

[145] *Id.* at 8.

[146] *Id.*

[147] *Id.* at 9.

[148] *Id.*  Mr. Hollister told the Court that the longest Google Takeout he had ever heard of took two days.  *Id.* at 10. Mr. Hollister told the Court that the Google Takeout on Mr. Pitts's Gmail account would likely take about two hours.  *Id.*  Mr. Hollister did say the amount of time was based on the fact that he was doing a Google Takeout of a subset of information.  *Id.*

[149] *Id.* at 10–11.   On August 9, 2022, the Court received another letter from Mr. Hollister.  Aug. 9, 2022 Hollister Letter (Doc. 109).  Mr. Hollister's letter shows that, between December 9, 2021, and May 20, 2022, Mr. Pitts's Gmail account shows that six Google Takeouts were initiated.  *Id.*  The letter also shows that five downloads of Google Takeouts were at least initiated.  *Id.*  Mr. Pitts's assertion that he once attempted and quickly abandoned a Google Takeout is severely undermined by information showing that (1) multiple Google Takeouts were initiated, and (2) multiple downloads were initiated.  A download would not be initiated until after a Google Takeout is complete.  *See* May 27, 2022 Hollister Letter (Doc. 88) at 1 (Mr. Hollister explaining that he was able to successfully complete a Google Takeout of Mr. Pitts's Gmail account but could not download the Google Takeout because of an authentication issue).

successfully completed.  This information may be available by examining the device or devices from which the downloads were started.

Mr. Pitts would not give the Court a straight answer as to what device or devices he used to attempt the Google Takeouts.  First, he said that he had no idea what devices were used to attempt the Google Takeouts.[150]  Next, he said that he "maybe" used his brother's computer.[151]  Then (under oath), Mr. Pitts said that he attempted a Google Takeout with the his son's Google Chromebook.[152]  Mr. Pitts testified that he did so after he got his devices back from FESSAR.[153]  But this Chromebook was in Mr. Hollister's possession at the time the attempted Google Takeouts occurred.[154]  It could not be the device at issue.

At the end of the August 8, 2022 hearing, the Court found by clear and convincing evidence that Mr. Pitts knows which computer or computers he used to attempt the Google Takeouts, that that Mr. Pitts was intentionally withholding information about those computers, and that Mr. Pitts could provide the computer or computers if he so desired.[155]  Under its inherent civil-contempt power, and to coerce Mr. Pitts's compliance with Court Orders, the Court incarcerated Mr. Pitts for up to two days.  On August 10, 2022, Mr. Pitts produced a Gateway computer on which he asserts he attempted to perform the attempted Google Takeouts.  Upon examination, it was determined that this computer was used in December of 2021 to perform a Google Takeout and a subsequent download of that Google Takeout.  The Court ordered Mr. Pitts released from incarceration.

---

[150] *Id.* at 5.

[151] *Id.* at 10, 20.

[152] *Id.* at 31–32.

[153] *Id.*

[154] *Id.* at 38–39.

[155] *Id.* at 72–73.

## DISCUSSION

In its Motion for Sanctions, FESSAR seeks a default judgment against Mr. Pitts for his failure to comply with the Court's Orders.[156] Mr. Pitts has not responded to the Motion in writing. Although it is not entirely clear, it seems as though FESSAR is invoking Federal Rule of Civil Procedure 37(b)(2) and the Court's inherent authority as grounds for a default judgment.

Let's start with Rule 37(b)(2). "If a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may issue further just orders," including "rendering a default judgment against the disobedient party."[157] To impose sanctions under Rule 37, "there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party."[158] The Eighth Circuit counsels that "the entry of default judgment as a sanction should be a 'rare judicial act.'"[159] The "Supreme Court has strongly indicated, however, that the harsh remedy of default judgment under Rule 37(b)(2) . . . is appropriate when a party's 'failure to comply [with discovery] has been due to ... willfulness, bad faith, or any fault of [the party].'"[160] Moreover, "[w]hen the facts show willfulness and bad faith . . . the district court need not investigate the propriety of a less extreme sanction."[161]

On December 20, 2021, the Court granted FESSAR's Motion to Compel in part. In that Motion, FESSAR argued that Mr. Pitts's failure to provide access to his Gmail and iCloud credentials severely hindered FESSAR's access to proper discovery.[162] The Court agreed and

---

[156] FESSAR's Mot. for Sanctions (Doc. 78).

[157] Fed. R. Civ. P. 37(b)(2)(A)(vi).

[158] *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999).

[159] *Comiskey v. JFTJ Corp.*, 989 F.3d 1007, 1009 (8th Cir. 1993) (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)).

[160] *Id.* (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958) (brackets and ellipsis in original)).

[161] *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817–18 (8th Cir. 2001).

[162] Br. in Supp. of FESSAR's Mot. to Compel (Doc. 74) at 8–10.

ordered Mr. Pitts to provide such access based on Mr. Pitts's discovery obligations and on the Consent Judgment and Injunction. So Mr. Pitts violated a discovery order (for nearly five months). And he has continued up to this very day in his attempts to prevent or delay FESSAR from getting the information it needs—namely, whether FESSAR's confidential information is in his possession.

The next question is whether Mr. Pitts's violation was willful. In short, yes. For starters, Mr. Pitts made no effort between December 20, 2021 (the day the Court granted FESSAR's Motion to Compel), and May 20, 2022 (the first day of the show cause hearing), to comply with the Court's Order granting FESSAR's Motion to Compel. Mr. Pitts "believe[d] that he need not follow an explicit Order from the Court if he disagree[d] with it."[163] And at the numerous show cause hearings in this case, Mr. Pitts dug deeper by providing little besides provable, blatant lies.

Here is a non-exhaustive sampling of Mr. Pitts's falsehoods:

- Mr. Pitts said that, as of May 20, 2022, he did not know his login credentials. But Mr. Pitts accessed his Gmail account and performed Google Takeouts twice in May of 2022 (before the show cause hearings). He knew his Gmail password all along.

- Mr. Pitts said he did not have the Blu View 2 Tracfone that was linked to his Gmail account. Mr. Pitts not only had that Tracfone but he used it to access his Gmail account less than an hour before the hearing in which he denied any knowledge of the phone.

- Mr. Pitts represented to the Court that he was technologically incapable of providing much assistance to get the password. But Mr. Pitts knew how to export information from his Gmail account, delete the account, and change the password when he wanted to. Those acts are not indicative of the "country rube" persona that Mr. Pitts has tried to sell at the hearings.

- Mr. Pitts said that he couldn't access his cloud-based storage accounts because he did not have any electronic devices. The six devices Ms. Pitts brought to Court tell a different story. Additionally, Mr. Pitts used another device, a Windows computer, in May of 2022 to perform the Google Takeouts.

---

[163] Suppl. Inj. (Doc. 84) at 6.

- Mr. Pitts told the Court that Casey gave him the correct password after the May 20, 2022 hearing.  But Mr. Pitts already knew the correct password well before that time.

- Mr. Pitts gave the Court a false phone number for Casey.  Mr. Pitts said it was a simple mistake that he was off by one digit.  The Court does not believe this.  Mr. Pitts was doing all he could to keep the truth from coming out.

- Mr. Pitts said that the only time he violated the Court's Preliminary Injunction was when he provided services at Little Rock Christian Academy.  Mr. Pitts violated the Court's Preliminary Injunction another time in July of 2021, when he provided fire extinguisher services under the name of Rapid Action Protection to a FESSAR customer—the Meadow View Apartments.

- Mr. Pitts said he did not attempt a Google Takeout.  Then after admitting to attempting to perform the Google Takeouts, Mr. Pitts said that he used his son's Google Chromebook.  That cannot be true.  From late October of 2021 until May 25, 2022, the Chromebook was in Mr. Hollister's possession.  The attempted Google Takeouts happened on May 13, 2022, and May 19, 2022.  Mr. Pitts did not have the Chromebook at that time and thus could not have used it for the attempted Google Takeouts.

Mr. Pitts's constant pattern of staunch disobedience, knowing deceit, and continued obstruction show the "willfulness and bad faith" on Mr. Pitts's part to justify a default judgment.

Mr. Pitt's willful violation of the Court's Order granting FESSAR's Motion to Compel has prejudiced FESSAR.  Mr. Pitts was required to turn over the credentials within fourteen days.[164] It took five months, multiple threats of incarceration for civil contempt, and a two-part show cause hearing for Mr. Pitts to reluctantly comply with the Court's December 20, 2021 Order.  On top of that, it is clear that Mr. Pitts attempted two Google Takeouts during the time he was under this Court's Order to provide FESSAR with his login credentials.  Because of Mr. Pitts's willful foot-dragging, FESSAR will probably never know the extent of FESSAR's proprietary or confidential information Mr. Pitts has accessed or otherwise utilized or copied for future use.

It goes without saying that the amount and substance of any proprietary or confidential information Mr. Pitts has used personally or divulged to FESSAR's competitors would be integral

---

[164] Dec. 20, 2021 Order (Doc. 77) at 1–2.

to FESSAR's counterclaims.   FESSAR is suing Mr. Pitts for breach of the Noncompetition Agreement, conversion, and violations of state and federal trade secrets laws.   Whether Mr. Pitts still has FESSAR's customer and pricing lists and whether he has used them would be highly relevant to determining if Mr. Pitts is in breach of the Noncompetition Agreement.   Moreover, because such information is FESSAR's property, it would also go a long way in proving FESSAR's conversion claim.   And if Mr. Pitts is retaining or distributing confidential and proprietary information (which likely amount to trade secrets) for future use, that is highly relevant to FESSAR's trade secret claims.

In sum, Mr. Pitts has willfully violated this Court's Order granting FESSAR's Motion to Compel (and associated Orders).   Mr. Pitts has left FESSAR with the prospect of prosecuting its case "lacking evidence it would have but for the deceit of" Mr. Pitts.[165]   That's prejudice.   Mr. Pitts's willfulness means that the Court "need not investigate the propriety of a less extreme sanction."[166]   Even if it had to do so, there's no less-extreme sanction that would work here.   The Court therefore grants default judgment in favor of FESSAR on its counterclaims against Mr. Pitts. This default judgment goes only to liability.   Damages is a story left for another day.

The Court's inherent authority provides an independent basis to impose the sanction of a default judgment.   According to the Supreme Court, "[i]t has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'"[167]   "For this reason, 'Courts of justice are universally acknowledged to be vested, by

---

[165] *Carey*, 186 F.3d at 1021.

[166] *Larson*, 242 F.3d at 818.

[167] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)).

their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'"[168]  The Court's inherent power is potent and thus must be "exercised with restraint and discretion."[169]  Within that discretion lies "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."[170]

Mr. Pitts has abused the judicial process in numerous ways.  First, as shown above, he has consistently lied and made implausible excuses all to avoid submitting to this Court's "lawful mandates."  Second, Mr. Pitts has violated the Court's Preliminary Injunction at least four times.[171] Third, Mr. Pitts violated the Consent Judgment and Injunction.[172]  Fourth, as extensively discussed above, Mr. Pitts was in violation of the Court's December 20, 2021 Order granting FESSAR's Motion to Compel for at least five months.  He only reluctantly complied with that Order because he was faced with imminent incarceration for civil contempt.  And even when confronted with that potentiality, Mr. Pitts still feigned cooperation while all along trying to dupe the Court into

---

[168] *Id.* (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)).

[169] *Id.* at 44.

[170] *Id.* at 44–45.  The Eighth Circuit says that, "when a litigant's conduct abuses the judicial process, … dismissal of a lawsuit is a remedy within the inherent power of the court." *Carey*, 186 F.3d at 1022 (quoting *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir.1992)).  There is no reason to assume default judgment is not similarly within the inherent power of the Court.

[171] Mr. Pitts was required to timely submit a declaration under oath swearing that he had purged FESSAR's proprietary, confidential information in his possession.  He did not do so.  Mr. Pitts was not supposed to induce FESSAR's customers to terminate their relationships with FESSAR.  Yet he badmouthed FESSAR to LRCA (a longtime FESSAR customer) and induced LRCA to go with another company.  Mr. Pitts was not supposed to work for himself or any other competing business of FESSAR within a 150-mile radius of Pine Bluff, Arkansas.  Mr. Pitts helped Mr. Neeper service fire extinguishers at LRCA.  *See* May 25, 2022 Hr'g Tr. at 72–73 (Mr. Pitts admitting to violating the preliminary injunction by performing work at LRCA).  Mr. Pitts was not supposed to operate Rapid Action Protection, LLC (his own company) within a 150-mile radius of Pine Bluff, Arkansas.  Mr. Pitts, on behalf of Rapid Action Protection, LLC serviced fire extinguishers in Clarksville, Arkansas, in July of 2021.  *See* Drew Aff. (Doc. 98-1) at 1–3.

[172] Mr. Pitts turned over one heavily damaged device and two devices that he had reset to factory settings.  None of the devices were of any value to the forensic examination.  That was Mr. Pitts's aim all along.  On top of operating in bad faith by rendering the devices useless for purposes of the examination, Mr. Pitts revealed (again) that he was not the technological dunce he professed to being in front of the Court.

25

believing that he was trying his level best.  The deceit and attempts to sidestep the Court's Orders continue to this day.

Mr. Pitts refused to obey the Court's June 3, 2022 and July 14, 2022 Orders.  He did not provide the required access to the Tracfone until he was once again staring down incarceration for civil contempt.  He did not produce the devices upon which he attempted to perform the Google Takeouts.  And even staring down civil contempt, Mr. Pitts's story on the attempted Google Takeouts changed at every turn.  He didn't know anything.  He didn't do the attempts.  He used his brother's computer.  He used his son's computer.  It would take eight days for the Google Takeouts so he never downloaded any information.  He doesn't know what devices he used to attempt the Google Takeouts.  All lies.

At every opportunity, Mr. Pitts has shown contempt for the Court and its Orders.  The only appropriate sanction at this point is entry of default judgment against Mr. Pitts based on his incessant abuses of the judicial process.

## CONCLUSION

For the foregoing reasons, FESSAR's Motion for Sanctions is GRANTED in part.[173] Default judgment on liability (not damages) is entered in favor of FESSAR and against Mr. Pitts on all of FESSAR's counterclaims.  The Court awards to FESSAR its reasonable attorneys' fees, expert fees, and costs related to FESSAR's Motion to Compel, Motion for Sanctions, preparation for and attendance at the May 20 and May 25, 2022 show cause hearings, FESSAR's preparation of a proposed order granting FESSAR's Motion for Sanctions, and FESSAR's preparation for and

---

[173] Mot. for Sanctions (Doc. 78).  FESSAR asked the Court to incarcerate Mr. Pitts until he complied with the Court's December 20, 2021 Order.  *Id.* at 1.  Mr. Pitts provided his login credentials at the May 25, 2022 hearing.  Thus, if the Court incarcerated Mr. Pitts for failing to timely comply with the Court's December 20, 2021 Order, it would be punishing Mr. Pitts.  Punishment is beyond the Court's civil-contempt power.  So, technically, that part of FESSAR's request is denied.

attendance at the August 8, 2022 show cause hearing.[174]  The amount of such fees and costs will be determined after the Court receives and reviews FESSAR's billing and costs for the above-named activities.

IT IS SO ORDERED this 10th day of August 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[174] By way of the Consent Judgment and Injunction, FESSAR received its fees and costs associated with FESSAR's Motion for Contempt.  Mr. Pitts must still pay those fees and costs as set out in the Consent Judgment and Injunction.

27